# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| DEAN GERARD THOMAS, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | 19 C 2777 |
| | ) | |
| JP MORGAN CHASE BANK, NATIONAL ASSOCIATION, | ) ) ) | Judge Charles P. Kocoras |
| | ) | |
| Appellee. | ) ) | |

## ORDER

Before the Court is the Appellant Dean Gerard Thomas' ("Thomas") Motion for Stay Pending Appeal (the "motion") of the Order granting JP Morgan Chase Bank, National Association's, ("Chase") Motion to Dismiss Thomas' Chapter 11 case under 11 U.S.C. § 1112(b). For the following reasons, the motion is denied.

## STATEMENT

For purposes of this motion, the Court recites an abridged version of the facts as reflected in the record. The facts are undisputed unless otherwise noted.

On March 28, 2008, Thomas executed a promissory note with Chase in the original amount of $902,000.00. Thomas subsequently secured a mortgage which was duly recorded as a lien against the property located at 61 George Street, Grayslake, IL.

In October 2009, Thomas defaulted on the mortgage and failed to remain current with his monthly payment obligations since. He subsequently fell into foreclosure.

On October 2, 2017, Thomas filed a voluntary petition for relief under chapter 11, case number 17-29541. On March 29, 2018, Thomas filed a motion for adequate protection and agreed to make monthly payments of $3,100.00 to Chase. These monthly payments went towards the monthly principal and interest due on the promissory note. It is undisputed that Thomas failed to pay any postpetition taxes and insurance premiums. To date, Chase has paid $32,000 for taxes and $5,000 for premiums. On March 8, 2019, Chase filed a motion seeking dismissal of the chapter 11 case. The Bankruptcy court held a hearing on April 11, 2019 and granted Chase's motion (the "April Order"). On April 24, 2019, Thomas timely appealed the April Order, which is currently pending in the U.S. District Court for the Northern District of Illinois.

Around May 29, 2019, Thomas received a notice that Chase had rescheduled the foreclosure sale for June 18, 2019. On June 7, 2019, Thomas filed the instant motion, seeking a stay of the scheduled June 18, 2019, foreclosure sale.[12]

The imposition of a stay pending appeal is an "extraordinary remedy." *In re: Chad Robert Bullock Debtor(s)*, 2019 WL 2482870, at *2 (Bankr. S.D. Ill. 2019) (quoting *Karl v. Edelman*, 491 F.2d 684 (7th Cir. 1974)). A stay pending appeal is "an

---

[1] The parties agree that this Court retains jurisdiction over this proceeding under Federal Rule of Bankruptcy 8005. *See In re Mader*, 100 B.R. 989, 990 (Bankr. N.D. Ill. 1989).
[2] This is the fifth attempt to hold a foreclosure sale.

2

intrusion into the ordinary process of an administration and judicial review … and accordingly is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Niken v. Holder*, 556 U.S. 418, 427 (2009). Thomas bears a "heav[y] burden of justify[ing] the court's exercise of such an extraordinary remedy." *In re Special Proceedings*, 840 F. Supp. 2d 370, 374 (D.D.C. 2012).

In considering whether to grant a stay pending appeal under Bankruptcy Rule 8005, courts consider four factors: "(1) whether the appellant is likely to succeed on the merits of the appeal; (2) whether the appellant will suffer irreparable injury absent a stay; (3) whether a stay would substantially harm other parties in the litigation; and (4) whether a stay is in the public interest." *Matter of Forty-Eight Insulations, Inc.*, 115 F.3d 1294, 1300 (7th Cir. 1997). The Court must also consider the totality of the circumstances presented in the case. *Evans v. Buchanan*, 435 F. Supp. 832, 842 (D. Del. 1977). Thomas bears the burden of showing that circumstances warrant a stay of judgment. *See S.N.A. Nut Co. v. Nat'l Union Fire Insurance Co.*, 1996 WL 31155, at *2 (Bankr. N.D. Ill. 1996).

In the instant motion, Thomas argues that he has a substantial possibility of success pending an appeal, that he will be irreparably injured absent a stay, and that Chase will not be harmed by the entry of a stay.[3] We evaluate each argument in turn.

---

[3] Thomas alleges that the fourth prong, whether there will be harm to the public interest, is inapplicable to the underlying dispute. Therefore, Thomas presents no argument pertaining to this prong.

3

We first evaluate whether Thomas will likely succeed on his appeal. In the context of a stay pending appeal, "the applicant must make a stronger threshold showing of likelihood of success to meet his burden." *Matter of Forty-Eight Insulations, Inc.*, 115 F.3d at 1301. *See Virginia Petroleum Jobbers Ass'n v. Federal Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958) (requiring a stay movant to make "strong" showing of likelihood of success.)

Thomas presents three core arguments in support of his likely success on appeal: (1) the Bankruptcy court violated his due process rights by improperly denying him the right to an evidentiary hearing; (2) Chase is entitled only to the payments set forth in the adequate protection plan; and (3) Chase's motion treated the underlying dispute as a chapter 13 case, not chapter 11. We analyze each argument in turn.

Thomas first argues that the Bankruptcy court violated his due process rights by improperly denying him an evidentiary hearing. 11 U.S.C. § 1112(b)(1) requires "notice and a hearing" prior to dismissal, but only in particular circumstances. 11 U.S.C. § 102(A) (emphasis added). *See Yehyd-Monosson USA, Inc. v. Fokkena*, 2011 Bank.LEXIS 3725 (8th Cir. 2011) (no evidentiary hearing was required when Court's decision was supported in a Debtor's admission of fact); *See also In re C-TC 9th Ave. Partnership*, 113 F.3d 1304, 1312 (2nd Cir. 1997) (an evidentiary hearing is not necessary when "the record is sufficiently well developed to allow the bankruptcy court to draw the necessary inferences to dismiss a Chapter 11 case for cause …").

4

Section 1112(b)(1) states that the court "shall convert a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause." Section 1112(b)(4) sets forth an unexhaustive list of grounds that may constitute "cause" for dismissal. *In re Schultz*, 436 B.R. 170, 174 (Bankr. M.D. Fla 2010). That section "specifically provides that the failure to pay post-petition taxes is cause for dismissal of a chapter 11 petition." *Aleshire v. Wells Fargo Bank, N.A.*, 589 B.R. 154, 161 (N.D. Ill. 2018); *See* 11 U.S.C. § 1112(b)(4)(1) (cause of dismissal exists whenever there is a "failure to timely pay taxes owed after the date of the order for relief.") "[T]he determination for cause under § 1112(b) is 'subject to judicial discretion under the circumstances of each case.'" *In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir. 1984) (quoting *In the Matter of Nancant*, 8 B.R. 1005 (Bankr. D. Mass. 1981)).

In the April Order, the parties established that Thomas failed to pay his postpetition taxes and insurance premiums. Instead, Chase advanced $32,000 in taxes and $5,000 for insurance premiums. Thus, the Bankruptcy court denied an evidentiary hearing, explaining its skepticism as to whether "Chase [] waived the 11 U.S.C. § 1112(b)(4) duty to pay taxes after the entry of order of relief." The court continued, "[Thomas] has to pay the taxes, and he hasn't done so. Chase's act of paying them is to protect themselves, not to reward [Thomas]." The court subsequently dismissed the case "for failure to pay postpetition taxes, real estate taxes."

5

Indeed, it does not appear that any genuine dispute existed as to whether Thomas payed his postpetition taxes and premiums. In fact, he conceded that Chase had paid both on his behalf. Therefore, it does not appear an evidentiary hearing was necessary in determining whether Thomas complied with Section 1112(b)(4).

Thomas next argues that Chase is only entitled to the adequate protection payments. Adequate protection "is provided to safeguard the creditor against depreciation in the value of its collateral during the reorganization process." *In re Farmer*, 257 B.R. 556, 560 (Bank. D. Mont. 2000); *Paccom Leasing Corp. v. Deico Elecs., Inc.*, 139 B.R. 945, 947 (9th Cir. 1992). If the value of the collateral decreases, the creditor is entitled to cash payments so that the value of its interest in the collateral remains constant. 11 U.S.C. §§ 362(d)(1), 361(1); *See also In re Addison Properties Ltd. Partnership*, 185 B.R. 766, 769 (Bankr. N.D. Ill. 1995). Thus, the secured creditor is entitled to the amount of adequate protection by which the collateral depreciates. *In re Farmer*, 257 B.R. at 560.

To support his assertion, Thomas articulates the following rule statement:

> An unsecured creditor is entitled to be protected (compensated), during the period that the bankruptcy sale is imposed, typically in the form of monthly cash payments equal to the estimated depreciation, pursuant to 11 U.S.C. § 361(1). The under secured creditor is not entitled to receive any additional compensation, directly or indirectly. *United Sav. Ass'n of Texas v. Timbers Of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 108 S. Ct. 626, 98 L. Ed. 2d 740 (1988); *In re Reddington/Sunarrow, Ltd. P'ship*, 119 B.R. 809 (Bank. D.N.M. 1990).

6

We find no certainty that this argument will prevail on appeal. Neither of the cases Thomas cites in support address head on the question of whether the payment of adequate protection discharges a debtor's duty to pay postpetition taxes under Section 1112(b)(4). Instead, both cases stand for the general proposition that "an unsecured creditor whose collateral is not depreciating cannot receive interest on its collateral during the stay to assure adequate protection." *In re Reddington/Sunarrow Ltd. P'ship*, 119 B.R. at 813 (citing *Timbers*, 484 U.S. at 382). Indeed, the Bankruptcy court eluded to this very point, stating that "[Thomas] still has an obligation to pay the taxes in the interim since the entry … of the filing." Thomas fails to point to at any statutory language to support his assertion that the deposit of adequate protection payments circumvents his tax obligations under Section § 1112(b)(4).[4] Therefore, we find this prong in favor of Chase.

Thomas has shown that he will suffer irreparable harm absent a stay. The Seventh Circuit has stated that "[w]hen it comes to the forced sale of a residence, we can assume that the potential for irreparable harm is great." *HSBC Bank USA, N.A. v. Townsend*, 793 F.3d 771, 779 (7th Cir. 2015); *See Deutsche Bank Nat'l Tr. Co. as Tr. for GSAA Home Equity Tr. 2006-18 v. Cornish*, 759 F. App'x 503, 508 (7th Cir.

---

[4] Thomas also asserts that Chase's initial motion treats the underlying dispute as a chapter 13 case, because "[Chase] want[s] to dismiss the case because they believe the plan cannot be confirmed." In the April Order, Chase responded by stating that "the debtor [would] not be able to do what he is proposing to do *as a last argument*." The Bankruptcy court subsequently dismissed the case for the aforementioned reasons. Therefore, we find Thomas' argument not likely to succeed on appeal.

7

2019) (explaining that "*Townsend* clearly implied that stays pending appeals in foreclosure cases should be routine to prevent the irreparable harm of losing one's home.") Therefore, we find that Thomas will face irreparable harm of losing his home and that this prong favors Thomas.

However, we also find that Chase would be substantially harmed if the stay is granted. Chase correctly points out that Thomas has filed for bankruptcy protection three times since the mortgage was executed and has yet to demonstrate the ability or inclination to satisfy the judgment. Thomas responds to this particular assertion by claiming that he has a chapter 11 plan in place. In the April Order, Thomas explains: "The plan, once confirmed, would call for [Thomas] to pay the taxes and the insurance premiums. And the disclosures and schedules show that he will, in fact, be able to afford that." However, neither Chase, nor a court, is obliged to accept the plan. *See Aleshire v. Wells Fargo Bank, N.A.*, 589 B.R. 154, 156 (N.D. Ill. 2018) (debtor proposed three reorganizational plans under chapter 11, none of which were accepted the creditors); *See also In re Gac Storage El Monte, LLC*, 489 B.R. 747, 754 (Bankr. N.d. Ill. 2013) (explaining the requirements a court must consider when confirming a chapter 11 plan).

On March 6, 2016, Chase was granted a $1,255,848.93 judgment in the foreclosure action. Thomas obtained a discharge and was not personally liable on the debt. Yet, as Chase points out, Thomas continues to live in the home and has not paid a monthly payment on the note in over a decade. In Illinois, the interest rate on a

8

judgment is nine percent *per annum*. 735 ILCS 5/2-1303. *See CitiMortgage, Inc., v. Sharlow*, 2014 IL App (3d) 130107, ¶ 20. Chase explains that interest accrues annually in the amount of $113,026.40 on the judgment entered in the foreclosure action. Thus, interest accrues daily in the amount of $309.66, or $9,418.78 when divided into twelve equal installments. Therefore, each month Thomas paid $3,100.00 under the agreed order, but the judgment debt increased by $6,318.89 each month. Accordingly, we find that Chase is substantially harmed by its inability to foreclose. We also find that denying the stay is in the public interest because Thomas has admitted to not paying his taxes and has failed to keep current on his monthly payment obligations since October 2009.

Given those considerations, we find that the imposition of a stay pending appeal is inappropriate in this case. While the Court fully recognizes that Thomas faces irreparable harm in the loss of his home, the other stay factors weigh in favor of Chase.

## **CONCLUSION**

For the aforementioned reasons, the Court denies the motion to stay pending appeal. It is so ordered.

_____
Charles P. Kocoras
United States District Judge

Dated: 6/24/2019

9