UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Case No. 22-09817 |
| | ) | |
| Christy A. Thomas, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Honorable Deborah L. Thorne |

### <u>MEMORANDUM OPINION</u>

JPMorgan Chase Bank National Association ("Chase") objects to the cramdown of its

secured claim by Debtor Christy A. Thomas ("Christy") in her chapter 11 plan and argues that it

is prohibited by the anti-modification provision of 11 U.S.C. § 1123(b)(5).  This court previously

sustained the Chase objection in its order entered on May 10, 2023. (Dkt. No. 65.)  Christy now

brings a motion under Rule 59(e) of the Federal Rules of Civil Procedure to alter or amend and

vacate the May 10 Order.  Chase moves to modify the automatic stay of 11 U.S.C. § 362 seeking

an *in rem* order to allow it to proceed with its state court remedies.  The two matters were

combined for hearing and testimony on November 7, 2023.  For the reasons that follow, this

court agrees with its May 10 Order and finds that 11 U.S.C. §1123(b)(5) precludes the

modification of Chase's claim.  The stay is modified to allow *in rem* relief.

### I.      Findings of Fact

### 1.  The 2008 Mortgage

In 2008, Christy and her husband, Dean Thomas, borrowed $902,000 from Chase to

refinance the 2007 mortgage on their principal residence.  They granted a security interest to

Chase in their residence at 61 George Street, Grayslake, Illinois (the "Property"). (Dkt. No. 113,

Ex. 9.)  The following legal description described the Property in the 2008 Mortgage:

> Lots 1 and 2 in the Dean G. Thomas Final Plat of Resubdivision, being a Subdivision of
> Lots 1 and 2 in Gerald Thomas' Resubdivision, being a Resubdivision of part of blocks 3

and 4 in Palmer's Addition to Grayslake, being a Subdivision in the southeast ¼ of the southeast ¼ of Section 27, Township 45 North, Range 10, East of the Third Principal Meridian, According to the Final Plat of said Resubdivision thereof recorded June 25, 1999 as document 4377029, in Lake County, Illinois.

PIN#'s 06-27-413-022-0000 & 06-27-413-023-0000

(*Id.*) This was the identical legal description contained in all previous mortgages granted in 2002, 2003, 2006[1] and 2007. (Dkt. No. 113, Exs. 5-9.)[2] The 2008 Mortgage and all others were recorded with the Lake County Recorder of Deeds. Certified copies of the recorded mortgages were admitted as exhibits during the hearing.

Peter Katsikas, a Chase employee familiar with loan originations and loss mitigation at Chase, testified concerning general practices at Chase as well as to the documents which were contained in Christy and Dean's file. Prior to signing the 2008 Note secured by the mortgage, Dean submitted the Uniform Residential Loan Application disclosing that he was applying for a conventional mortgage for 61 George Street, Grayslake, Illinois, that the Property would be his primary residence and the purpose of the refinance was for his personal use. (Dkt. No. 113, Ex 20.) At about the same time and prior to the 2008 Mortgage refinance, an appraisal for the Property (Lots 1 and 2) was prepared showing that the Property was worth $1,150,000. (Dkt. No. 113, Ex. 19.) Mr. Katsikas testified that Chase was able to extend the $902,000 loan because the loan to value ratio was appropriate and supported the extension of credit. The loan closed and

---

[1] The Property address in 2006 was 57 George Street which later changed to 61 George Street.

[2] This legal description was consistent with prior mortgages granted to LaSalle Bank, N.A. in 2000 in 2002 and in 2003. (Dkt. No.113, Exs. 2, 5-6.) In 2006, Christy and Dean signed a Note with State Bank and Trust in the original principal amount of $800,000 at a variable interest rate and secured repayment by granting a mortgage in the property described above (Dkt. No. 113, Ex 7.) The 2006 borrowing was to finance the construction of their home. In August 2007, Christy and Dean refinanced the State Bank and Trust Note with Chase and executed a new Note dated August 28, 2007, and secured it by granting a mortgage to Chase in the property now known as 61 George Street, Grayslake, Illinois (the Property). The 2007 Mortgage contained the same legal description that was consistent with all the prior mortgages. In certain of the prior mortgages the Tax I.D. numbers were not included with the legal description but this did not impact the conveyance of the Property as collateral to Chase and under Illinois statute is not required for an effective conveyance. 765 ILCS 5/35d.

thereafter, Christy and Dean made fifteen mortgage payments and then defaulted. (Dkt. No. 67 ¶ 8.)  On July 2, 2010, Chase filed a foreclosure complaint in state court, Christy and Dean answered and did not dispute the legal description or the common address which was identical to that quoted above. (Dkt. No. 113, Ex. 14, ¶ 3(I).)

Ultimately, a judgment of foreclosure was entered in March 2016.[3]  The statutory period of redemption expired in June 2016 and a judicial sale was scheduled for July 26, 2016.  (Dkt. No. 67 ¶¶ 11-13.)  The entry of the judgment by the State Court triggered a series of bankruptcy filings by Christy, by Dean and by Christy and Dean together.[4]  These, in combination with the cessation of foreclosure sales during the two years of the COVID pandemic, allowed Christy and Dean to stay in the Property and to avoid making mortgage payments for over seven years after the judgment of foreclosure.  Moreover, they did not pay property taxes or insurance— Chase made these payments.  As a result, Chase filed a proof of claim in this case for $1,728,365.38 reflecting principal, interest, and costs incurred by Chase for property tax, insurance payments and reasonable attorneys' fees.  Although no evidence of the current value of the Property now or on the date of the petition for the Property was offered, the court believes that it is far less than $1,728,365.38 because the claim includes insurance and property tax payments in addition to the

---

[3] On January 14, 2010, Christy and Dean filed a voluntary petition (Case No. 10-1306) seeking relief under chapter 7 of the United States Bankruptcy Code.  During the case, the automatic stay was modified to allow Chase to proceed to foreclosure on the Property.  Christy and Dean received standard discharges on June 1, 2010.  The discharge order relieved them of personal liability on the Property but did not discharge any *in rem* claims held by Chase.

[4] Dean filed a chapter 13 on March 7, 2017 (Case No. 17-06864) which was dismissed on September 6, 2017. This was followed by a chapter 11 filed on October 2, 2017 (Case No. 17-29541), and dismissed on April 15, 2019.  The dismissal was appealed but withdrawn when the District Court denied the stay. *Thomas v. JP Morgan Chase Bank, Nat'l Ass'n*, Cas No. 19cv2777, 2019 WL 13221434 at *4 (N.D. Ill. June 24, 2019); Dkt. No. 25, *Thomas v. JP Morgan Chase Bank, Nat'l Ass'n*, Case No. 19cv2777 (N.D. Ill. Oct. 9, 2019).  Christy and Dean filed another chapter 11, on July 8, 2019 (Case No. 19-19137).  Judge Schmetterer entered an order for *in rem* relief and subsequently denied a motion for reconsideration.  The case was dismissed on May 26, 2020.

$902,000 originally borrowed in 2008.[5]  Finally, no objection to the Chase claim has been filed and it stands as *prima facie* evidence of the claim as of the petition date.

Although Christy did not testify at the hearing, Dean did, and he testified that the 2008 loan was only for Lot 1 in spite of the fact that the mortgage clearly stated that both Lots 1 and 2 secured the note.  He also testified that the closing in 2008 was in a Jewel parking lot and that he did not receive copies of the executed documents until an overnight package was received at a later time, but that package and its contents were never admitted.[6]  Apparently neither Christy nor Dean questioned the fact that the mortgage clearly showed that both Lots 1 and 2 were given as collateral and never raised this with Chase until after the foreclosure judgment, in an earlier bankruptcy.

Dean's testimony concerning the argument that the 2008 mortgage only granted Chase an interest in Lot 1 was not believable.  He has worked in the construction/development business for many years and he provided no credible explanation as to why a lender would loan $902,000 based upon an appraisal of $1,150,000 for both lots, but in exchange for only a portion of the appraised property. Dean did not offer an explanation as to why he signed the mortgage documents which plainly covered both lots or why all the previous mortgages covered both lots. Further, he had no explanation as why this was not raised during the state court foreclosure.

Although Chase did not raise the inadmissabilty of this testimony,  none of this testimony was admissible under the parol evidence rule to contradict the plain terms of the mortgage. *Davis v. GN Mortgage Corp.,* 244 F.Supp 2d 950, 956 (N.D. Ill 2003) ("the parol evidence rule

---

[5] The only value was that contained on the Petition which reflected the bifurcated values—for Lots 1 and 2 separately and understandably produced a lower value.

[6] Christy attempted to have a document admitted purporting to be a copy of the 2008 mortgage.  It was not admitted because there was no foundation or credible explanation as to the markings in red which were clearly not part of the recorded 2008 Mortgage document admitted into evidence.

seeks to assure that a writing, intended to be a final expression of agreement between the parties to a contract, is not to be changed by the admission of evidence that adds to, modifies, or contradicts that agreement as written. *See generally,* John D. Calamari & Joseph M. Perillo, *The Law of Contracts* § 3.2 (4th ed.1998)"). While there is a fraud exception to the parol evidence rule, it must be established by clear and convincing evidence, and none was provided. *Id.* at 957. No credible evidence was put forth that Chase in any way defrauded Christy and Dean by recording the 2008 mortgage.

### 2. January 2023 Proposed Plan

Christy proposed a plan which would bifurcate and cram-down Chase's loan (Dkt. 51 at 7-9.)  In support of the proposed cram-down, Christy argues that Chase's claim is secured by two separate properties—the primary residence (Lot 1) and a "vacant buildable lot" separate from the residence (Lot 2) – and the mortgage is therefore subject to modification and can be crammed-down to the reduced secured value, reflecting two separate lots. (*Id.* at 7-8.)

Chase objected to confirmation of the Debtor's plan and argued that the treatment of its loan violated the antimodification provision of 11 U.S.C. § 1123(b)(5).  The court sustained Chase's objection by an order entered on May 10, 2023 (Dkt. No. 65.)  Christy filed a motion to Alter or Amend and Vacate the May 10, 2023 Order under Fed. R. Civ. P. 59(e).  (Dkt. No. 73.) On May 11, 2023, Chase filed its Motion for Relief seeking an *in rem* order. (Dkt. No. 67.)

## II.     DISCUSSION

### 1. Jurisdiction

Jurisdiction over this matter is vested in this court by virtue of 28 U.S.C. § 1334(b) and the General Order of Reference entered in this District.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(L).

### 2.    Reconsideration under Rule 59(e) of the Federal Rules of Civil Procedure

Rule 9023 of the Federal Rules of Bankruptcy Procedure incorporates Rule 59(e) of the Federal Rules of Civil Procedure.  Rule 59(e) allows "[a] claimant . . . to direct a court's attention to matters such as newly discovered evidence or a manifest error of law or fact." *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995).  Additionally, to prevent manifest injustice, a court may alter or amend its judgment under this rule. *In re Johnson*, 480 B.R. 305, 309 (Bankr. N.D. Ill. 2012).  "A 'manifest error'…. is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 ( 7th Cir. 2000) (quoting *Sedrak v. Callahan*, 987 F.Supp. 1063, 1069 (N.D.Ill. 1997).  A party cannot use a Rule 59 motion to rehash old arguments or introduce new evidence that could have been presented earlier. *Id.* Christy rehashes old arguments, presents no newly discovered evidence, and the court finds no reason to amend its earlier order.  Her motion is denied as explained below.[7]

---

[7] Chase presented a Motion to Bar Certain Evidence and Testimony arguing that certain arguments related to whether Chase's mortgage and specifically that the legal description was created by fraud was barred by the doctrine of judicial estoppel and *Rooker-Feldman* doctrine.  *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415-416 (1923); *District of Columbia Court of Appeals v. Feldman***,** 460 U.S. 462, 486 (1983). This court denied the motion without prejudice, and in reviewing the pleadings and the case law cited, the court believes that Chase is correct.  The *Rooker-Feldman* doctrine bars de facto appeals of state court judgments to federal district courts.  *Kyles v. Fed. Home Loan mtg. Co.,* 2018 U.S. Dist. LEXIS 62691 *4-5 (April 13, 2018).  And, although under Illinois law the order confirming the sale, rather than the judgment of foreclosure is the final and appealable order for procedural purposes, the Illinois Supreme Court has held that a foreclosure judgment "is final as to the matters it adjudicates." *EMC Mortg. Corp. v. Kemp,* 2012 IL 113419, ¶ 11, 982 N.E.2d 152, 154 (Ill. 2012). And, as the Northern District of Illinois Court recognized in *Kyles*, "the matters adjudicated by the foreclosure order here plainly encompass the matters that Kyle[s] raises in her adversary complaint, specifically the legitimacy of the defendants' lien on the property subject to the state court foreclosure action." *Kyles* at *7  This alternative ground also supports the court's ruling.

**3.      The Anti-Modification Provision of §1123(b)(5) Applies**

Section 1123(b)(5) provides that a chapter 11 plan may "modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence*[.]" 11 U.S.C. § 1123(b)(5) (emphasis added).  This is commonly known as the anti-modification provision or exception.  The Bankruptcy Code defines principal residence in 11 U.S.C. § 101(13A) as "a residential structure if used as the principal residence by the debtor, including incidental property."  Incidental property includes "property commonly conveyed with a principal residence in the area where the property is located." 11 U.S.C. §101(27B).

Christy failed to introduce any new evidence but continues to argue that her plan properly bifurcates the Chase claim into two separate lots because that is the way she listed the Chase claim on her schedules in this case.  Dean also testified that Lot 2 was a separate buildable lot.  The evidence, however, did not support that argument.  Each mortgage taken out since 2000 granted a security interest in both Lots 1 and 2.  The application for the 2008 borrowing stated that the loan was to refinance the primary residence of Christy and Dean and there was no evidence presented that it either lot has been used for anything else.  Dean testified that the driveway which goes through Lot 2 was actually a "construction access road" but that there is no other driveway to the garage which is on Lot 1 and if the lots were separated, the entrance to garage would have to be moved or the garage would be inaccessable.  The evidence also demonstrated that in the twenty-three years since the first mortgage was extended, Christy and Dean have never partitioned the property into two separate legal descriptions nor have they developed the property.  The testimony that Lot 2 is a separate, buildable and developable lot

was simply not supported by anything other than the self-serving statements of Dean intended to reduce the exposure to Chase.

As this court previously explained in the May 10, 2023 Order, Lot 2 is clearly incidental property as it contains the driveway leading to the garage.  The backdoor of the house opens directly into this space (March 13, 2019 Plat of Survey, Dkt. No. 60, Ex. 2; Reply at 5, Dkt. No. 63.)  The Debtor argues that because a portion of the Chase collateral, Lot 2, is in Dean's opinion buildable and could be developed, it is not subject to the anti-modification exception.

The majority of courts have adopted a bright-line approach concluding that the anti-modification provision does not apply unless the real property is only the debtor's principal residence. *Scarborough v. Chase Manhattan Mortg. Corp. (In re Scarborough),* 461 F.3d 406, 411 (3rd Cir. 2006); *Lomas Mortg., Inc. v. Louis,* 82 F.3d 1, 7 (1st Cir. 1996); *In re Abrego,* 506 B.R. 509, 515 (Bankr. N.D. Ill. 2014) (adopting and describing this approach as the majority approach); *In re Lister,* 593 B.R. 587, 591 (Bankr. S.D. Ohio 2018).

Other courts have adopted an approach that modification is not possible if the real property includes the debtor's principal residence. *In re Brooks,* 550 B.R. 19, 24-25 (Bankr. W.D.N.Y. 2016; *Wages v. J.P. Morgan Chase Bank, N.A. (in re Wages)*, 508 B.R. 161, 167-168 (9th Cir. BAP 2014) (applying anti-modification under § 1123(b)(5)).  Finally, other courts have adopted a case-by-case approach, focusing on the intention of the parties.  These courts look at the totality of the circumstances looking at the

> predominant character of the transaction, and what the lender bargained to be within the scope of its lien.  If the transaction was predominantly viewed by the parties as a loan transaction to provide the borrower with a residence, then the antimodification provision will apply. If, on the other hand, the transaction was viewed by the parties as predominantly a commercial loan transaction, then stripdown will be available.

*Brunson v. Wendover Funding, Inc. (In re Brunson),* 201 B.R. 351, 354 (Bankr. W.D.N.Y. 1996).

8

As the court reconsidered its prior ruling from May 10, it is clear that under any of the approaches described above, the Property is not excluded from the anti-modification exception of §1123(b)(5). At the time the 2008 loan application, Dean and Christy disclosed to Chase that the Property was intended for use as their principal residence. Chase relied upon that disclosure when it considered the appraisal for the Property which included Lots 1 and 2 in determining the loan to value ratio. The Property has only been used as the principal residence and even though Dean testified that it could be developed, it has not been for over 23 years. Under all three approaches, the court finds that Chase's claim is secured only by a security interest in real property that is the Debtor's principal residence and, as such, is protected by the anti-modification provision of §1123(b)(5). The Debtor's motion for reconsideration under Rule 59(e) is denied and Chase's objection to the January plan is sustained.

4.      **Motion for *In Rem* Relief**

*In rem* relief is warranted in under 11 U.S.C. § 362(d)(4) because the Debtor has participated in a scheme to hinder and delay Chase and this has continued through at least four bankruptcies filed either by Christy, her husband, or jointly. In each case, Chase was stopped from proceeding to sale of the Property after obtaining the judgment of foreclosure in 2016. The Debtor and her husband have lived in the Property for many years without paying the mortgage, the property taxes or insurance (although it is alleged that since the filing of the instant case, mortgage payments have been made). Moreover, no payments were made during the COVID pandemic when foreclosures were stayed. (Chase Proof of Claim, Claim No. 4.)

There is no equity in the Property as the Chase claim is well over $1 million and the Debtor's schedule states that the two lots together are only valued at $520,000. The automatic stay is modified to permit Chase to enforce its *in rem* rights against the Property described as 61

George Street, Grayslake, Illinois 60030, Property PIN # 06-27-413-022-0000 and 06-27-413-023-0000 under the terms and conditions of contract and applicable nonbankruptcy law and pursuant to 11 U.S.C. § 362(d)(4)(B).  A separate order will issue granting *in rem* relief for recording with the Lake County Recorder of Deeds. The fourteen day stay of the order imposed by Bankruptcy Rule 4001(a)(3) is waived.

ENTER:

Dated:  November 30, 2023

_____
Honorable Deborah L. Thorne
United States Bankruptcy Judge